### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 20-14198-CIV-MARTINEZ/MAYNARD

**DAVID POSCHMANN,**

**Plaintiff,**

**v.**

**THE LAUDERDALE BOUTIQUE HOTEL, LLC,**

**Defendant.**

_____/

### REPORT AND RECOMMENDATION ON THE JOINT MOTION FOR APPROVAL AND ENTRY OF CONSENT DECREE AND TO DISMISS WITH PREJUDICE (DE 11)

**THIS CAUSE** comes before this Court upon referral of the above-referenced Motion. Following a review of the Motion, the relevant authority, and the arguments heard on October 19, 2020, this Court recommends that the Motion be granted for reasons set forth below.

### BACKGROUND

Plaintiff David Poschmann commenced the present action on June 22, 2020, asserting one claim for injunctive relief pursuant to the Americans With Disabilities Act ("ADA"). DE 1. Plaintiff explains that he is disabled as that term is defined under the ADA and that he acts as an advocate for the rights of similarly situated persons as a "tester," ensuring places of public accommodation, including online hotel reservation systems, are in compliance with the ADA. *Id.* at ¶¶ 3, 10. He contends Defendant Lauderdale Boutique Hotel, LLC, discriminated against him in violation of the ADA because the hotel reservation system on Defendant's website, www.thelauderdalehotel.com, did not enable individuals with disabilities to make reservations for accessible hotel rooms during the same hours and in the same manner as individuals who do not

need accessible hotel rooms.  *See generally id.*  Specifically, Plaintiff alleges that he tried to reserve an accessible hotel room through Defendant's online reservation system because he requires certain accessibility features due to the amputation of his right leg.  *Id.* at ¶12.  He could not do so, however, because Defendant's website contained no descriptions of accessibility features at the hotel or in the hotel rooms.  *Id.*  Plaintiff therefore could not assess whether the hotel or a specific hotel room met his accessibility needs in light of his disability.  *Id.*  Since he could not tell from the website whether the hotel had accessible rooms, he could not reserve an accessible room.  *Id.* The website also did not indicate whether accessible rooms would be held, blocked, or guaranteed as required by ADA regulations.  *Id.*  Thus, he concludes, Defendant's hotel reservation system fails to comply with 28 C.F.R. § 36.302(e), the regulation implementing Title III of the ADA that is specifically concerned with reservations made at places of lodging.  *Id.*  Plaintiff's Complaint sought a permanent injunction ordering Defendant to implement reservation policies consistent with the ADA.  *Id.* at 6-7.

After an extension from the Court, Defendant's Answer was due August 28, 2020.  DE 6. On August 27, 2020, the parties filed a Joint Notice of Settlement informing the Court that this matter had been resolved.  DE 9.  The parties filed the instant Motion on September 11, 2020.  DE 11.  The Motion requests the Court approve and enter of the parties' proposed consent decree, dismiss this matter with prejudice, and retain jurisdiction to enforce the consent decree.  *See id.* On September 14, 2020, the Honorable Jose E. Martinez referred the Motion to the undersigned magistrate judge for a recommendation.

## DISCUSSION

The parties seek the Court's approval of a consent decree memorializing the settlement of this matter and requiring Defendant to maintain changes made to its website and online

reservations system as a result of this litigation.  In considering whether to enter a proposed consent decree, courts should be guided by the general principle that settlements are encouraged.  *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).  However, a court "must not merely sign on the line provided by the parties" and blindly accept the terms of a proposed consent decree. *United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981) (Rubin, J., concurring). Prior to entering a consent decree, the court must satisfy itself that the agreement is fair, reasonable, lawful, and not contrary to public policy.  *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1240, 1244 (11th Cir. 1997); *see also United States v. City of Hialeah*, 140 F.3d 968, 973 (11th Cir. 1998) ("The district court has the responsibility to insure that a consent decree is not unlawful, unreasonable, or inequitable." (internal quotation omitted)).  And a court cannot enter a consent decree over the objections of a party whose legal rights would be affected by the decree.  *See City of Hialeah,* 140 F.3d at 979; *White v. Alabama,* 74 F.3d 1058, 1073 (11th Cir. 1996).  The court must consider the proposed consent decree as a whole and it "must stand or fall as a whole." *United States v. DeKalb Cty., Ga.*, No. 1:10-CV-4039-WSD, 2011 WL 6402203, at *9 (N.D. Ga. Dec. 20, 2011).

First, the Court considers the lawfulness of the consent decree.  28 C.F.R. § 36.302(e) implements Title III of the ADA as it relates to reservations made at places of lodging, such as inns and hotels.  That regulation provides:

> (e)(1) Reservations made by places of lodging.  A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—

>> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

28 C.F.R. § 36.302(e).

Paragraph 8 of the proposed consent decree sets forth the content of the court order requested by the parties.  It requires Defendant to "maintain a policy to ensure that individuals with disabilities can make reservations for accessible guestrooms on the [online reservation system] in the same manner as individuals who do not require accessible rooms."  DE 11-1 at ¶ 8.a.  It acknowledges that Defendant's online reservation system currently complies with § 36.302(e) and requires that the system "continue to identify and describe accessible features at the hotel and within its designated accessible guest room in enough detail to reasonably permit individuals with disabilities to assess whether the hotel meets his or her accessibility needs." *Id.* at ¶ 8.b.  The system also must enable individuals to reserve on request the accessible guest room specifically; remove that room from the online reservation system when requested; and hold the accessible room for the guest that specifically reserved it.  *Id.* at ¶¶ 8.d and 8.e.

At the October 19, 2020 hearing, the undersigned reviewed with the parties the content of the proposed consent decree and the changes Defendant has made to its online reservation system as a result of this lawsuit.   The undersigned accessed the website—found at

www.thelauderdalehotel.com—during the hearing to view the changes.  First, a new tab captioned "ADA" has been added to the website.  It provides details about the hotel's accessibility generally and the accessibility of the designated room, including door widths, the spacing around the bed and bathroom for wheelchair accommodation, bathroom safety features,  and alert adaptations to aid those with visual or auditory impairments to know if a smoke detector goes off or if there is a knock at the door.  The "ADA" tab also features photographs of the accessible guest room and walkways to access the guest room.  In addition, every page on the website now includes the following text at the bottom: "This website complies with the Americans With Disabilities Act. All pathways to the office, hotel grounds, and ADA room are wheelchair accessible.  Accessible rooms are labeled.  If an accessible room is not displayed for the dates selected, it is occupied." These changes respond to the requirements in 28 C.F.R. § 36.302(e)(1)(i)-(v).  Overall, Defendant updated the content of its website to comply with the regulations.  *See* 28 C.F.R. § 36.302(e)(1)(i); *see also* DE 11-1 at ¶ 8a.  The undersigned finds that the proposed consent decree—which requires Defendant to maintain these changes—complies with applicable law.

Next, the Court considers the fairness and adequacy of the proposed consent decree.  In doing so, the Court must assess the strength of the plaintiff's case considering "the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement."  *North Carolina*, 180 F.3d at 581 (internal quotation omitted).  Here, the extent of discovery and the stage of the proceedings weighs against approval of the consent decree to some extent.  This lawsuit was filed on June 22, 2020, and the Notice of Settlement was filed two months later on August 27, 2020, well before the discovery deadline of February 11, 2021.  *See* DE 1, DE 7, DE 9.  Thus, the Court surmises that not much discovery took place in this case prior to settlement.  The issue in dispute

is a relatively simple one, however, and most of what one needed to know to determine whether Defendant was in violation of 28 C.F.R. § 36.302(e) was easily determinable by reviewing the website.  At the hearing, Plaintiff's counsel represented that before the lawsuit the website did not describe accessibility features of the hotel or its guest rooms, as required.  Thus, this is not a case where much discovery was needed.  Further, although the case settled early, early settlements benefit everyone involved in the process and so "everything that can be done to encourage such settlements . . . should be done."  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (internal quotation omitted).

A consent decree is fair when it is the product of good-faith negotiations, reflects the opinions of experienced counsel, and takes into account the possible risks involved in litigation if the settlement is not approved.  *United States v. Georgia–Pacific Corp.,* 960 F. Supp. 298, 299 (N.D. Ga. 1996).  The Court notes that in reviewing similar ADA accessibility cases filed in this District, counsel for Plaintiff and Defendant often appeared; as such the Court knows both are experienced in this type of matter.  Counsel both opined the proposed consent decree is fair as it implements changes in the reservation system that substantively address Plaintiff's accessibility concerns while sparing Defendant the expense of prolonged litigation.  Counsel for the parties also point out that the requested consent decree is desirable not only from Plaintiff's perspective, but also from Defendant's perspective as possible protection against future ADA lawsuits over Defendant's online reservation system.  In support, Defendant cites the decision by the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") in *Haynes v. Hooters of America, LLC*, 893 F.3d 781 (11th Cir. 2018).  In that case Dennis Haynes, a blind individual, sued Hooters of America, LLC, ("Hooters") under the ADA because its website, www.hooters.com, was not compatible with screen reader software.  *Id.* at 782-83.  Prior to Mr. Haynes's lawsuit,

however, a different plaintiff had filed a near identical website-accessibility lawsuit against Hooters. *Id.* at 783. The parties in that first case had settled their dispute, executed a settlement agreement, and Hooters had begun the process of updating its website pursuant to that agreement. *Id.* After Mr. Haynes filed suit, Hooters moved to dismiss, arguing there was no case or controversy as it was actively undertaking remediation pursuant to the earlier settlement agreement. *Id.* The district court agreed and dismissed the Haynes matter as moot. *Id.* On appeal, the Eleventh Circuit reversed the dismissal, noting Mr. Haynes was not a party to the prior settlement agreement and thus could not enforce the remediation plan if, for whatever reason, Hooters failed to update its website according to the agreement. *Id.* at 784. In this case, Defendant sees the entry of a consent decree, enforceable in ways a private settlement contract is not, as a potential defense against future website reservation accessibility cases, should they be filed.

The undersigned finds that the proposed consent decree is adequate and fair. The changes to Defendant's website and online reservation system are not onerous—indeed they have already been implemented—but address the requirements of the ADA regulations and accomplish Plaintiff's goal in vindicating the civil rights of disabled individuals, *see* DE 1 at ¶ 10. The proposed consent decree also requires notice and an opportunity for Defendant to cure prior to any motion regarding a breach of the consent decree, DE 11-1 at ¶ 8.f.

The Court must also be satisfied that a decree is reasonable as to third parties affected by the decree. *City of Miami,* 664 F.2d at 440-41. In this case, the third parties affected by the consent decree are other disabled individuals, and they are affected positively. Because of the changes implemented by Defendant pursuant to this consent decree, other disabled individuals are able to determine whether Defendant's hotel is an appropriate accommodation for their needs and book their accommodations "during the same hours and in the same manner as individuals who do not

need accessible rooms."  28 C.F.R. § 36.302(e)(1)(i).  In this way, the consent decree furthers the purpose of the ADA in providing a "national mandate for the elimination of discrimination against individuals with disabilities" and standards for addressing such discrimination. 42 U.S.C. § 12101(b).  *See DeKalb Cty., Ga.,* 2011 WL 6402203, at *10 ("[A] court should ensure that any decree comports with the goals of Congress, public policy, and the public interest."); *see also City of Miami, Fla.*, 664 F.2d at 441 (Rubin, J. concurring) (The court must  consider the nature of the litigation and the purposes to be served by the decree; If the suit seeks to enforce a statute, the decree must be consistent with the public objectives Congress sought to achieve with the legislation).  Having reviewed the proposed decree, the undersigned finds it to be fair, reasonable, lawful, and not contrary to public policy.

## <u>CONCLUSION</u>

**ACCORDINGLY**, the undersigned recommends to the District Court that the parties' Joint Motion for Approval and Entry of Consent Decree and to Dismiss with Prejudice (DE 11) be **GRANTED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case.  If a party does not intend to object to this Report and Recommendation, that party shall file a notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 23rd day of October, 2020.

_____

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE